ALBANY,
Feb. 1825.

Clark
v.
Phelps.

## CLARK *against* PHELPS AND OTHERS.

*By the act to regulate highways, (2 R. L. 270, s. 1, 16,) the commissioners of highways are authorized to lay out public highways, through land lying in a state of nature, or through improved or cultivated land, commonly so called; but this provision does not au-* TRESPASS *quare clausum fregit*, tried July 16th, 1823 at the Tompkins Circuit, before NELSON, C. Judge.

The plaintiff proved that the defendants, in November, 1821, opened a road through his land, and, in doing so, pulled down a corn crib which the plaintiff had used as such for several years; and ploughed and scraped 12 or 15 rods through the plaintiff's mill yards; and erected a bridge across Salmon creek, so as to injure the plaintiff's water privileges for mills; ploughed and scraped close to the rear of the plaintiff's dwelling house, and cut up his door yard with wagons and teams in carrying stone and timber for the bridge. The plaintiff had, on his premises, a

*thorize them* to lay out a highway through buildings, mills, or manufactories, or fixtures, yards, &c. appurtenant to them, without consent of the owner.

Accordingly, where commissioners laid out, and opened a road through a corn crib, mill yard, and the tenter bars of a fulling mill, *held*, that they were liable to the owner in trespass.

The right of the owner of improved or cultivated land, through which the commissioners have laid a highway, to appeal to three judges of the court of common pleas, under the 36th section of the act, (2 R. L. 282,) is personal to such owner, whose private rights cannot be affected by an appeal in behalf of any other person, through whose land the same road may also have been laid. If there be several owners, each may appeal for himself.

It is the duty of the judges to whom such appeal is made, to convene and decide it as soon as may be, on a day, &c. which they shall agree upon, of which they should give notice to the parties, who then, and not till then, are bound to attend, or be concluded.

An appeal suspends the powers of the commissioners; and till their acts are affirmed by a decision, they cannot open the road. If they do so, they are trespassers.

Where one C., through whose land a road was laid, appealed to three judges; then M. through whose land the same road passed, appealed to three judges, two of whom were the same judges appealed to by C.; and C. appeared before the last board, and objected to their proceeding, on the ground that his appeal was first; but his objection was overruled; and he then stated his reasons against the proceedings of the commissioners, in passing over the ground through which the road ran; and the judges affirmed the acts of the commissioners; *held*, notwithstanding, that their decision was void, and of no effect as to C. and that he was entitled to select the three judges who were to pass upon his rights.

After C.'s appeal, one of the judges to whom he appealed went abroad, and did not return till after M.'s appeal was decided; and no further proceedings were had by C.; and the commissioners laid out and opened the road; yet *held*, that C.'s appeal continued in force, and was not to be deemed discontinued or abandoned by the neglect of the judges to convene and hear it; and that the commissioners were trespassers.

If the commissioners deem the judges dilatory, they should apply to them to fix a day for the hearing.

After the appeal, the judges become actors, and if they do not proceed, it cannot be imputed as a lach to the party.

Where a road is laid out through improved land, on the petition of twelve men, upon the proceeding coming in question before a court, it will be intended that they were twelve reputable freeholders, within the words of the act, (2 R. L. 275, s. 16,) until the contrary be shown. Per *Woodworth*, J. interrupting *Platt, arguendo.*

saw mill, fulling and carding machine.　In June, 1821, the plaintiff had agreed with a carpenter to build him a dwelling house, pointing out the spot where it now stands as the site.　Some of the timber was procured in August, and the dwelling house finally erected before the actual opening of the road ; but after it was laid out.　The road cut off about two rods of the plaintiff's tenter bars, erected for carrying on the business of his fulling mill ; but it was in fact worked and travelled so as not to interfere with the tenter bars or the dwelling house.

The defendants justified as commissioners of highways, and proved that they had, on the 14th August, 1821, laid out the road according to the provisions of the act to regulate highways, on the petition of 12 freeholders ; and that they had proceeded according to the directions of the 16th section of that act.　(2 R. L. 275.)

The plaintiff then proved that he appealed from this act of the commissioners to R. Smith, S. Crittenden and J. Sutton, three of the Judges of the C. P. of Tompkins county, giving them notice of his appeal, August 21, 1821.　Judge Smith declined attending to hear the appeal till after his return from the late state convention, of which he was a member, when he promised to give the plaintiff notice, &c. This was never done.

The defendants proved, that in the meantime, Andrew Myers, through whose improved land the same road ran, appealed to Crittenden, Sutton and Gere, three of the Judges of Tompkins county, Crittenden and Sutton being two of the Judges to whom the plaintiff had appealed, who, on the 22d day of September, 1821, met and heard and decided the appeal, affirming the proceedings of the commissioners ; that the plaintiff appeared before them with counsel, and apprised them of his appeal, and objected to their proceeding ; but afterwards went with the Judges on the line of the road, through his premises, and pointed out his objections ; and was present when the decision was made ; tha proper notice had been given to the plaintiff, to remove his fences previous to the opening of the road.

that the road ran through

his mill yards, so as to deprive him of the beneficial use of his mills; but this evidence was overruled; and, under the direction of the Judge, the jury found for the defend. ants. The only question of fact submitted to them was, whether the road did not run through the plaintiff's garden, occupied as such for four years before the road had been laid out.

*J. Platt*, moved to set aside the verdict, and for a new trial. He insisted, 1. That the commissioners had no power, under the act to regulate highways, (2 R. L. 270,) to destroy the plaintiff's mill site, or lay out a road through a building of any kind. This act creates their office, and defines their power. The language of the first section is general. By this, their authority as to the nature of the ground is unlimited in terms, but it refers to the limitation in the 16th section, which confines their power to *improved* or *cultivated* land; or, as they are called, in another part of the section, *enclosed* or *improved* lands. What is the meaning of these terms? They are not technical, and must, therefore, be understood according to their ordinary acceptation, which is merely land brought from its wild uncultivated state, and made capable of present use, for the purpose of crops. The various provisions of the 16th section relate to land of this description. The whole of this section is a mere proviso to the first. It was assumed by the legislature, that, to run a road through wild lands, rather conferred a benefit than worked an injury to the owner; but in reference to *improved, enclosed* or *cultivated* lands, it was otherwise. The Court will, however, in construction, limit the description according to the nature of the case, the subject matter, and the power of the legislature. From these, we think there is an implied restriction to wild lands, or *improved* or *cultivated* lands, properly so called. The legislature had no power to burthen other lands. There is a *proviso* in the 16th section, that a road shall not be laid through a garden, or orchard of a certain age or growth. No adequate mode of assessing damages is provided for the injury to buildings, mill sites and the like; and it would be injurious to them, to suppose

they intended to confer a power to lay roads through a building, without any adequate provision for compensation. The power extends merely to *improved* or *cultivated* land, in the sense for which we contend.    Look at the great caution which they have exercised relative to the demolition of buildings, in laying out streets in the city of New York.    Express words were deemed necessary to confer this power, and the most cautious provisions were adopted against its abuse.    It would be absurd, to call a *corn crib improved* or *cultivated* land.    So of the mill site, in its natural state.    The tenter bars were necessary for the enjoyment of the fulling mill.    The legislature thought that a garden or orchard might have come within the power given, and therefore, inserted an express exception of these. Why was this done?    They were considered as peculiarly dear to the owner, being generally appurtenant to his dwelling house.    Shall we be told that the legislature have guarded the appurtenance, but have left the building unprotected?    That they have carefully saved the incident, without intending to protect the principal?    That a paltry cabbage or potato patch shall be held sacred, while the dwelling house may be destroyed?    It is a well settled rule of construction, that, though a statute may be couched in such general terms, as by a full and extended construction to take away private property, it shall be restricted in its operation to other objects.    The Court will intend that the legislature did not mean to do injustice to the individual; and adopt such a construction as is consistent with the rights of the subject.    (*Gardner* v. *Trustees of Newburgh,* 2 John. Ch. Rep. 162.    *The People* v. *Platt,* 17 John. Rep. 195, 215.    *Bradshaw* v. *Rogers,* 20 John. Rep. 103, 106. *Varick* v. *The Corporation of New York,* 1 John. Ch. Rep. 53.    Bac. Abr. *Statute,* (I) pl. 10, p. 391.    *Wales* v. *Stetson,* 2 Mass. Rep. 143, 146.)    The 39th section of the act to regulate highways, also affords a strong inference against the power set up in this case.    It provides for the removal of fences in all cases where a road is laid out through enclosed lands.    This shows plainly that the legislature had in view ordinary enclosed fields merely; and it is inconsistent with any other construction than the one for which we contend.

ALBANY,
Feb. 1825.

Clark
v.
Phelps.

These fences are to be removed on a notice of 60 days only. If the removal of a building was contemplated, the operation may, in many cases, be very dilatory and expen sive. The mere materials of some houses would sell for $5000. Yet there is no power to extend the time, and no provision for the extraordinary expense.

2. It no where appears, in the proceedings, that the free· holders who petitioned to have the road laid out, were *re· putable* freeholders in the language of the 16th section of the act.

[WOODWORTH, J. This is clearly to be intended, till the contrary is shown ; and we so held in a case lately before us.]

3. We had appealed from these proceedings, by which the power of the commissioners was suspended. They had no jurisdiction till our appeal was determined. The second appeal could have no effect upon our rights. *Prior in tempore, potior est in jure,* applies. The 36th section, which gives the right of appeal, has prescribed no limit of time for deciding upon it. This right is given in severalty to each and every one aggrieved by the act of the commis· sioners, and the decision of the Judges is made conclusive in the premises. Though there may be an appeal on account of the public inconvenience, in which case a single one may settle the question for that purpose, it was also intended for the more important end of vindicating private right. Myers had a right to appeal in his own name ; but the determination in his case should not be allowed to affect ours. Our rights are to be decided upon our own appeal, and that only. We had a right to the services of Judge Smith as a constituent member of the board. This board were limi ted to the subject matter of the particular appeal. On that alone could the decision be final and conclusive within the meaning of the statute. Our rights are not to be litigated through Myers, the decision of whose appeal ought not to affect us upon any principle. It was a matter over which we had no control ; we had no chance to counteract any abuse of our rights, because we were not a party. Myers

might have stated that the road was beneficial to him; that he appealed because his neighbor Clark was injured, and such an admission, which we had no right to contradict, should have produced an instantaneous decision against the appeal. The inquiry would be, "what business have you with Clark's interests?" The board would be right in saying, "you agree with the public, that the road should be laid; and, as between you and them, there is no issue· There is nothing for us to decide."

[SUTHERLAND, J. Does not the statute require the Judges, on appeal, to examine and decide upon the entire road laid out by the commissioners?]

Their power can only be co-extensive with the subject matter of the appeal. The time has been, and that too since the passage of the act of which this is a revision, when a single town was so large that a road might be laid through it by the commissioners, affecting hundreds of farms. The appeal is from the commissioners of the town; and the rights of several different individuals are usually involved in the inquiry. The law requires notice to none beside the commissioners. By all others, the discovery that there is an appeal may be merely accidental. The appellant may select three Judges, some of whom may be inimical to the rights of his neighbors, though indifferent as to his own. We are deprived of this right of election, as well as of notice. There are two modes of assessing damages provided, after the decision upon appeal, if it should be against the appellant. One of these must be elected by the party interested, within 30 days after the determination of the appeal. (2 R. L. 282, 3, s. 38.) Of this privilege we may also be deprived for want of notice, if the appeal of a third person is to affect us. It cannot be that the legislature intended to act with such a total disregard to private right. Each proprietor should have a chance to act and speak for himself. Without this, the right of appeal would be a mockery.

*J. A. Collier*, for the defendant. This is the ordinary case of a road laid out through improved lands on petition,

without the consent of the owner; an appeal and confirma-
tion by the Judges. Upon this, the defendants, the commis-
sioners, gave the plaintiff notice, to remove his fences, and
after waiting the 60 days, without obedience being yielded
to their notice, they go on as they lawfully might, and open
the road themselves. Clark, the plaintiff, appeared before
the Judges to whom Myers appealed, was heard there upon
his objections to the road; the Judges passed upon the
merits of these objections; and then the plaintiff, finding
that they were overruled, instead of resorting to his certio-
rari, commences an action of trespass against the commis-
sioners, who, throughout this business, did no more than
their duty.

The bold ground is taken, that the improvements in ques-
tion are of a nature not coming within the jurisdiction of
the commissioners. It is admitted, however, that the words
of the statute are general; that they reach the case; and it
is sought in vain to find any express exception of it. An
implied qualification is however sought for in the 16th sec-
tion. It is said to result from the nature of the provisions
found there, giving a different mode of proceeding in the two
cases of waste and improved lands; but it is admitted that
nothing is expressly taken out of the power of the commis-
sioners, except gardens and orchards of a certain age; and
it would seem to follow that, in relation to all other improve-
ments, their power is unlimited. The Court cannot legis-
late other exceptions into existence. The provisions for as-
sessing damages are even more liberal than in the instance
put of demolishing buildings in the metropolis. The party
may elect between a jury of the vicinage, and commissioners
to be appointed by a Judge of the Common Pleas. The law
secures an impartial constable (2 R. L. 284, s. 45) and an im-
partial jury. None of the jurors who certify in favor of the
road, are allowed to sit in assessing the damages, (sess. 40,
ch. 43, s. 1,) and the right of appeal is given from the assess-
ment of the commissioners to three Judges of the Common
Pleas. (Id. s. 2.) These instances indicate a most scrupu-
lous care in the legislature to guard the rights of the indi-
vidual. The commissioners had a right to act, unless it be

true that private property cannot be taken for public use, even with the most ample provision for compensation.

ALBANY,
Feb. 1825.

Clark
v.
Phelps

The measure upon which the Court are called to animadvert, by giving a very narrow construction to the act, is said to be the unwarrantable destruction of a fixture. This fixture is, in plain English, a mere corn crib, slightly built. We contend that commissioners may interfere with any improvements, except gardens and orchards. It would be lamentable that a flourishing village must be deprived of a very necessary road, because a corn crib or mill site happen to intervene. All this comes in very properly upon a calculation of damages. The exception of gardens and orchards may have been merely arbitrary. There does not seem to be any reason in the exception; but surely it cannot follow that houses and fixtures are, therefore, to be excepted. They are demolished every day in the city of New York for public purposes. In *Gordell* v. *Jackson*, (20 John. Rep. 725, 6, 7,) the language of the Court of Errors will be found to constitute an able argument against the narrow construction contended for.

The decision upon the appeal was final and conclusive, till reversed on certiorari. The plaintiff did not prosecute his own appeal with due diligence. He should have applied to some other Judge on being informed that Smith could not attend to the appeal. The business, in its nature, required immediate attention, and could not be postponed to suit the individual convenience of the Judge. When jurisdiction was given to the Judges by Myers' appeal, the plaintiff should have applied to another Judge, if he could not trust those selected by Myers, and associated him with the others as one of the board of appeal. Suppose Judge Smith had gone to Europe : were proceedings to be suspended till his return? Does the mere fact of giving notice to three Judges that an appeal is made to them, confer exclusive jurisdiction? The notice to Smith was necessarily conditional. Myers had the same rights as the plaintiff; and, unless he had appealed before Smith's return, would have lost his remedy by lapse of time. Suppose Smith had died; must the proceedings be hung up forever? At any rate, the

plaintiff might waive the right of nomination ; and he has done this.

Any one aggrieved has a right of appeal. ( *The People* v. *Champion*, 16 John. Rep. 61.) And the 36th section (2 R. L. 282) makes the decision on appeal conclusive. The road is finally established by the board of appeal till altered by an equal power. (2 R. L. 282, s. 37.) The reason of this provision is, that the board are supposed to have all the facts, relating to the entire road laid out, before them on a single appeal. Any one wishing to impeach the road may be heard before them. Is it possible the legislature intended that the commissioners should be harrassed by a series of appeals, separate and numerous as the individuals interested may be ? At this rate, few roads could be laid out short of several months litigation. The first decision must conclude as to the whole road ; and a decision to the contrary would virtually defeat the act by rendering its execution impracticable. The individual may not stop at the Judges of the Common Pleas ; but may sue out a certiorari to this Court ; and, upon the basis contended for, 50 or 100 writs of certiorari might be brought upon the same road. Some might be affirmed and some reversed. The two extremes of the road may be established and the middle gone. These great inconveniences cannot be avoided, unless the act of the commissioners is considered entire ; all its parts standing or falling together upon one review, co-extensive with the subject matter.

The maxim, *prior in tempore potior in jure*, relied on for the plaintiff, applies with the greater force against him. The decision establishing our right was first in time, the Judges having jurisdiction of the subject matter. Myers exercised proper diligence. The idea that notice to the plaintiff was unnecessary and legally inefficient, is a mistaken one. In *The Commissioners of Kinderhook* v. *Claw*, (15 John. Rep. 537,) it was held that notice must be given to all parties interested. But if this be otherwise, the remedy is with the legislature only. By the 42d sess. ch. 127, s. 1, a road once established by three Judges may be revoked by other Judges. This can only be where the commissioners have decided in

favor of the road.   If they withhold their assent, and the
Judges reverse their decision, and adjudge the road to be
laid out, it is the business of the commissioners to go on
and open it.  ( *The People* v. *Champion,* 16 John. Rep. 61.
*The Same* v. *Commissioners of Salem,* 1 Cowen's Rep.
23.)   If several appeals may be had, one set of Judges
may lay out the road, and another may refuse it.   The
39th section expressly protects the commissioners in all
their acts consequent upon an appeal and confirmation.
All these provisions show most clearly, that the legislature
never contemplated more than one appeal.

ALBANY,
Feb. 1825.

Clark
v.
Phelps.

If the Judges acted improperly in going into the merits
upon Myer's appeal, after the plaintiff had raised the ques-
tion of jurisdiction on the ground of his prior appeal, he
should have come to this Court on certiorari.  (*Beach* v.
*Furman,* 9 John. Rep. 229.   *Butler* v. *Porter,* 17 id. 145.
*Freeman* v. *Cornwall,* 10 id. 470.)   He has been deprived
of no right.   He had every chance to elect the mode in
which his damages should be assessed ; and though he suf-
fered the 30 days to pass without an election, the commis-
sioners were equally bound to see that he had his pay upon
the assessment of a jury.   (*In the Matter of Johnston,* 19
John. Rep. 272.)

*Platt,* in reply.   To say that the commissioners are ex-
pressly protected by the mandate of the Judges, begs the
question of jurisdiction.  If the commissioners had no power
to lay the road, the act of the Judges cannot help them to
it ; and the whole proceeding is void.

The plaintiff did not submit his rights to the second board
of Judges.   He objected expressly to their taking cogni-
zance of the matter, on the ground that he had made an
appeal in his own name ; and his going to the merits, after
being overruled, was not a waiver.

It is conceded, that if no compensation is provided for the
injury to buildings and fixtures, even an express power to
the commissioners would be void.   This must depend on
the 16th section, which I think I have shown, narrows
down the inquiry to what is cultivated lands ?   These
words I have defined.   They mean a close cultivated for

agricultural purposes. I deny that a grave yard, for in stance, would be included in the term, *improved, enclosed* or *cultivated lands*, as used by the 16th section. Would a church be included? If a witness should swear that a lot was uncultivated, what would be understood by this? Merely that crops were not raised upon it. Enclosed and improved lands are used in various parts of the statute in the same sense. Does a corn crib, tenter bars, and mill site come within these terms? The commissioners act under limited powers, which should be construed, if possible, consistently with private right. These powers are perfectly susceptible of such a construction. This is the first time we hear of their exertion upon buildings and fixtures, &c. The total absence of such attempts is a practical construction of the statute, sanctioned by an acquiescence of the whole community.

There was no unnecessary delay by the plaintiff in urging on the appeal. It was no more than reasonable, under the circumstances, that he should be indulged till Judge Smith's return. He had a right to select three Judges, out of the five, appointed by government. This narrow right of selection should not be fettered by a rigid construction. Because a Judge is necessarily absent a short time on business, to wait for his return should not operate as a waiver. Presenting the petition, or giving notice of the appeal, must, in practice, be received as conclusive evidence of a *bona fide* intention to prosecute it with effect, as rapidly as circumstances will admit. It is not necessary to speculate upon the consequence of Judge Smith's death. Probably, the Court would say that such an event, being the act of God, should work no injury; and require the substitution of another Judge. At any rate, when there is an appeal, there must be a decision before the road can be opened.

[SUTHERLAND, J. Suppose one appeals, and declines going forward with it, what remedy have the public, or other individuals, who may be interested in hastening a decision?]

This would, perhaps, depend, in some measure, on the question, whether the appeal be on account of the private

or the public injury. If for the private, there may be 100 appeals or more; whereas, if an individual appeals in behalf of the public, one single decision would settle their rights. But, in either case, on application to this Court, by any relator who should be interested, your honors would see that the judges should not unreasonably delay proceeding upon the appeal.

The distinction between a case ended by one appeal, and a case depending on several, hangs upon the difference between an appeal in right of the public, and in right of an individual. In the former case, the appellant is in the nature of a relator upon a mandamus or information; the whole subject matter is covered by the proceeding; whereas the appeals against private injuries must be as distinct from each other as actions of trespass. The decision, as to Myers, is an affirmance *pro tanto* merely. It reaches so much of the road, only, as runs upon his farm. The commissioners must wait till all appeals are out of the way. To be sure, there may be delay; and there should be. The subject matter is a private right. The object is to divest it; and if more obstacles were in the way, I should rejoice at it. If a road be laid without petition, through wild or uncultivated lands, several appeals would also lie; and, in either case, if part of the road be affirmed, and part reversed, the public must take the consequences. If embarrassed by such a result, there is then a summary power to discontinue the part which is held good, if it should be deemed not worth the preserving. Each appeal, however, would usually be considered in reference to the propriety of retaining the whole, or only part of the road; and cases might very well arise, in which it should be reversed in part, and affirmed in part, like a judgment. If a road be wholly refused, it is not final. It does not preclude the commissioners afterwards going on, and laying out a road upon a change of circumstances requiring this to be done.

Had the Judges affirmed Myers' appeal, leaving ours pending, the supervisors of the county might have refused to assess the damages of the former, till the event of the second appeal was known. If these decisions operate *pro*

ALBANY,
Feb. 1825.

Clark
v.
Phelps.

*tanto* only, which I think must be holden clear, the same inconveniences arise, whether there be one, two or more appeals. The 37th section (2 R. L. 282) does not apply to a case like the present. That relates to a refusal of the commissioners to lay out the road, and their being overruled on appeal, and the road laid out. They are then finally bound. But if they lay out in the first instance, and their proceedings are reversed, all is at large, and the commissioners may, in their discretion, proceed *de novo*.

It is said we should proceed by certiorari. Unfortunately, we are not parties to the appeal. Not being bound by it, we cannot question it. The Court would tell us, " the decision is void as to you;" and quash the writ as unnecessary and officious. The mere fact, that the law does not require notice to third persons, is of itself conclusive evidence that the party stands upon the merits of his own appeal alone.

*Curia*, per WOODWORTH, J. The commissioners are authorized by the first section of the act to regulate highways, (2 R. L. 270,) to lay out new roads under the restrictions therein mentioned. The 16th section specifies the exceptions, which are, that a road shall not be laid out through *improved or cultivated land*, without the consent of the owner, unless upon the application of twelve freeholders on oath ; nor through any orchard or garden without the like consent, if the orchard be of the growth of four years, or the garden shall have been cultivated for the like period.

It follows, from these provisions, that the commissioners may lay out new roads over land lying in a state of nature, and over such as are improved or cultivated within the meaning of those terms, as used in the act. In all other cases, authority is not given. The exception implies the right, in the first case, because, by restricting the powers of the commissioners where lands are improved or cultivated, it implies that no limitation was intended where there was no cultivation or improvement. It will be conceded that the words of the act, taken most extensively, may include every species of improvement. The erection of dwelling houses

barns and out houses, mills and manufactories, are *improvements* of great value. There is no exception in terms denying the right of the commissioners to prostrate such buildings for the purpose of laying out roads ; yet it has never been urged that such a right existed ; nor am I aware that it has ever been exercised, without the consent of the owner. The reason is obvious ; it is because such improvements, although highly beneficial, were not within the view of the legislature ; they did not so understand the terms, " improved or cultivated land." These terms are to be taken in the popular sense, according to the general understanding of the community, when distinguishing what is called wild land, or land in a state of nature, from that which has been cultivated and improved. The terms, to " improve or cultivate," may be considered synonymous. To cultivate is defined, " to improve the product of the earth by manual industry." When speaking of improved land, it is generally understood to be such as has been reclaimed, is used for the purpose of husbandry, and is cultivated as such, whether the appropriation is for tillage, meadow or pasture. The more valuable improvements on land, comprising buildings and their immediate appurtenances, could not have been in contemplation, as appears evident by the exception itself. When, therefore, the exception protects a garden or orchard of four years, and is silent as to other improvements, the removal of which would be attended with greater inconvenience and loss to the owner, it goes far to give a construction to the meaning of the words. A fair inference may be drawn from this provision that the legislature intended to confine the power of laying out roads within the limits I have stated. It became necessary to guard the right of the owner with respect to a garden and orchard ; for they fall within the terms, *improved* and *cultivated*. A garden is formed by cultivation of the land strictly ; the land on which an orchard is planted, is generally used in like manner. If the act had been silent as to these, there would be nothing opposed to their appropriation by the commissioners, if they deemed it proper. Could the legislature intend that a garden should be protected, and yet allow every

ALBANY,
Feb. 1825.

Clark
v.
Phelps.

other appendage to the dwelling house to be removed? That barns and out houses be taken down to give place to a road? Can a construction be tolerated, that the commissioners, under this section, have power to prostrate court yards, fences, trees and shrubbery, contiguous to a dwelling house? Was it intended that the ground immediately adjoining mills and manufactories, indispensably necessary for the enjoyment and use of those establishments, might be converted into a road, and leave the owner to his damages, to be assessed under the act? Can the commissioners take from a manufactory the adjoining ground, which is actually used and occupied by the various machinery and their appendants, essential to such use, and in the absence of which, the business cannot be carried on without loss or great inconvenience? I apprehend not. Grounds, used in this manner, may be said to be improved for those particular purposes; but they are not improved or cultivated land within the meaning of the act. If this exposition of the statute be correct, then the defendants had not authority to lay out the road in the manner they have done. The corn crib was a necessary appendant to the dwelling; the string of tenter bars, appurtenant to the fulling mill, fixed two feet in the ground, for the purpose of hanging cloth, was necessary to be placed in the manner stated in the case. The road cuts off a portion of these bars, and the corn crib. It seems, however, that it was worked and travelled so as not to interfere with the former. The plaintiff also offered to prove that the road includes so much of the yards of the saw mill and fulling mill as to deprive the plaintiff of their beneficial use. This was overruled. In the preceding particulars, it appears to me that the ground was appropriated in such a manner as not to fall within the description intended by the act; and, consequently, the commissioners ought not to have included such parts in the road laid out.

But if this construction is not well founded, then the question is, whether the plaintiff's appeal has been disposed of. If it has not, the defendants were trespassers in opening the road. The plaintiff appealed in season to three Judges, and, by the 36th section, it became their duty to

convene as soon as might be, and decide upon the appeal. When notice of the appeal was served on Judge Smith, he was about leaving home for the Convention, and agreed with the plaintiff to attend to it on his return. He was to fix on the time and give the plaintiff notice. Another of the Judges states, that the plaintiff informed him, the business was to remain until Smith returned. It does not appear that any further proceedings have been had on this appeal ; but shortly after it was made, Myers, through whose land the road also passed, appealed to three Judges ; two of whom were the same persons named by the plaintiff. They confirmed the laying out of the commissioners, and it is now contended that this is conclusive on the plaintiff. When the Judges met to decide the appeal of Myers, the plaintiff was present, and objected to their proceedings, as his appeal remained undetermined. The Judges determined to proceed. The plaintiff went on the ground with the Judges, and pointed out his objections ; but there is no evidence that at any time he waived his appeal. The plaintiff probably supposed, that the appeal of Myers would affect his interest ; and that it would be conclusive on him ; but he was mistaken. His appeal was then in full force, and could not be abandoned without his consent. No such consent can be inferred from his accompanying the Judges and stating his objections. As he was not bound to regard the proceedings of Myers, it was not a waiver, express or implied. The plaintiff never appealed to the Judges selected by Myers ; they could not gain jurisdiction of the appeal by implication. The statute contemplates that the appeal be made expressly, and that the party appealing name the Judges. Under such circumstances, it would be a perversion of the act to consider the plaintiff's appeal before them.

The true construction of the act is, that every person conceiving himself aggrieved, may appeal. Such are the words, and such evidently the intent. A road may extend through a town ; it may pass through twenty farms. The owner of land at one extremity may have good cause to appeal, so far as he is concerned ; but he has no interest or

ALBANY, Feb. 1825.

Clark v. Phelps.

concern with the owner of land at the other extreme point, 6 miles distant. The questions are altogether disconnected. One may show sufficient cause to reverse as to him; and, in the other case, it may appear that the road ought to be confirmed. It would, therefore, be absurd and unjust, that the merits of both appeals should be tried at the same time, and by the same persons, unless by consent. Each individual has the right of selecting three Judges, who are to convene and decide; but if the doctrine contended for be correct, then the party regularly bringing forward the first appeal has the exclusive right of selection, and the other persons are obliged to acquiesce.

But it is said, that no further proceedings have been had under the plaintiff's appeal, and, therefore, it is at an end. It will be seen the Judges are to convene; it is implied that they are to notify the parties, who then, and not till then, are bound to give their attendance. The Judges have not done this. . If the commissioners deemed the proceedings dilatory, and had they applied to the Judges to convene and appoint a day, it would have been done; but it was omitted. As to the plaintiff, it was agreed between him and Judge Smith to wait until his return from the Convention, and then he was to give the plaintiff a week's notice. There is no proof that this has been done. After the appeal, the Judges become actors and are required to proceed; if they do not, it cannot be imputed as a lach to the party appealing. The appeal, then, is still pending; and no authority existed for entering on the plaintiff's land. By the 39th section, 60 days are given to remove fences after the decision on the appeal. For these reasons, I am of opinion, that the verdict be set aside, and a new trial granted with costs to abide the event.

New trial granted. .