NEW-YORK PRACTICE REPORTS. 123

The People *ex rel.* Wait agt. Eggleston and others, &c.

---

## SUPREME COURT.

The People *ex rel.* Daniel Wait agt. Charles Eggleston and others, Commissioners of Highways of the Town of Preston.

Every person, liable to be assessed for highway labor, and owning lands in a town in which he is not a resident, may apply to the commissioners of highways of the town in which the lands are situated, to alter, discontinue, or to lay out any road through the same *town.*

Such non-residents are not restricted in their applications to the laying of roads through their *own lands.*

Where the commissioners of highways made an order refusing to lay out a highway through inclosed, improved, and cultivated land, without the consent of the owner, for the reason that the applicant had not given notice of a meeting of freeholders, to examine and certify as to its necessity and propriety, and because a certificate of twelve freeholders certifying that the highway was necessary and proper, had not been obtained; and referees, on appeal, reversed the order of the commissioners, and laid out the highway; *held,* that the decision and proceedings of the referees were void, and that the commissioners would be trespassers if they opened or worked such highway.

Also, *held,* that the proceedings and decision of the referees were no bar to new proceedings to lay out a highway on the same route that the referees laid the highway, although *four years* had not elapsed from the filing of the decision of the referees in the office of the town clerk.

*Broome Special Term, Oct.,* 1856.

Proceedings by mandamus.

The material facts established by the papers in this cause are as follows:—Solomon Wait, in June, 1855, applied for the

laying out of a public highway through the inclosed, improved and cultivated lands of Augustus Ross, Daniel Wait and Arnold Wait, situated in the town of Preston.   But only ten freeholders certified that such highway was necessary and proper; and as Ross did not consent to the laying of such highway, the commissioners of highways of the town of Preston made an order refusing to lay out such highway.

Afterwards, on or about the 22d day of June, 1855.   Asa Scott made an application to the commissioners of highways of Preston to lay out a public highway on or near the same route, through the inclosed, improved and cultivated lands of Ross, Daniel and Arnold Wait, situated in Preston.   But Ross did not consent to the laying of such highway, and twelve freeholders of Preston did not certify that such highway was necessary and proper, and no notice was given of a time or place that freeholders would meet to examine or certify as to the necessity and propriety of such highway.   And the commissioners of highways of Preston, on the 30th of June, 1855, made an order refusing to lay out such highway.   But an appeal was taken from such order to the county judge of Chenango county; and he appointed three referees to hear and determine the appeal.   And two of the referees on the 10th day of November, 1855, made a decision, by which they reversed the order appealed from, and laid out the highway as applied for by Scott.   The commissioners have not taken any steps for the opening or working of the highway laid out by the two referees; nor has such highway been opened or worked, or regarded by the commissioners as legally laid out.

On the 5th day of June, 1856, Arnold Wait, Daniel Wait and Hiram Hale, residents of the town of Norwich, who were liable to be assessed for highway labor, and owned lands in the town of Preston, presented an application to the commissioners of highways of Preston, by which they asked for the laying out a public highway through the inclosed, improved and cultivated lands of Augustus Ross and Daniel and Arnold Wait in Preston, on or near the same route that the two referees laid out the highway applied for by Asa Scott.

The highway applied for by Hale, Arnold and Daniel Wait is described in their application as, " beginning in the boundary line between the towns of Plymouth and Preston, at the termination of a road running in Plymouth through the lands of Lester Blackman, and thence to run southeasterly in Preston through the inclosed, improved and cultivated lands of Augustus Ross, Arnold and Daniel Wait, until it intersects near Wait's saw-mill, a road running east and west in Preston through the lands of Ross and Arnold and Daniel Wait, and of Asa Scott and Hiram Hale."

This application states that Ross did not consent to the laying of such highway. Twelve freeholders duly certified to the necessity and propriety of the proposed highway, and all proceedings were regular in obtaining such certificate. But the commissioners of highways of Preston afterwards refused, and still do refuse, to act upon such certificate, or to make any order, either refusing to lay out, or laying out such highway.

The relator obtained an alternative mandamus, commanding the defendants, as commissioners of highways of Preston, to make an order either refusing to lay out, or laying out such highway, or to show cause why they did not do so.

The defendants have made their return to the mandamus, by which they state, they have refused to make any order whatever upon the application of Hale, Arnold and Daniel Wait, for the laying out of the highway certified to be necessary and proper by twelve freeholders, as aforesaid, for these reasons, viz., 1st. The applicants, Hale and Waits, are non-residents of the town of Preston, and they ask for the laying out of a highway through lands of other persons than theirs in Preston.

2d. That the decision of the referees, laying out a highway on or near the same route upon the application of Asa Scott, is a bar to the application of Hale and the Waits, and will so remain for the term of four years from the filing of the decision of the referees.

On these facts the court is called upon to determine whether the relator is entitled to a peremptory mandamus, commanding the defendants, as commissioners of highways of Preston, to act

upon the freeholders' certificate that was obtained and pre-
sented to them by Hale and the Waits. The return is regarded,
by the stipulation presented, as demurred to upon this state of
facts.

> Lewis Kingsley, *for relator.*
> James W. Glover, *for defendants.*

Balcom, Justice. The statute which the relator claims au-
thorized Hale and the Waits to apply for the laying out of a
public highway through their own lands and the inclosed, im-
proved and cultivated lands of Augustus Ross in Preston, reads
as follows:—

" Every person liable to be assessed for highway labor, and
owning lands in a town in which he is not a resident, may ap-
ply to the commissioners of highways of the town in which the
lands are situated, to alter, discontinue, or to lay out any road
through the *same.*" (*Laws of* 1836, *chap.* 122, *p.* 163.)

The defendants' counsel insists that Hale and the Waits, who
are residents of Norwich, could only apply under this statute
for the laying out of a highway through their own lands in
Preston, and not through the lands of Ross. He argues that
the word " same," in the statute, belongs to the word " lands "
*understood,* instead of " town." This is an unauthorized con-
struction, and is too narrow. The true construction makes the
statute read so that every person liable to be assessed for high-
way labor, and owning lands in a town in which he is not a
resident, may apply to the commissioners of highways of the
town (in which the lands are situated) to alter, discontinue, or
to lay out any road through the same *town.*

It was clearly the intention of the legislature to place non-
residents, who own real estate in a town, and who are therein
assessed for highway labor, on equal grounds with residents, as
to the right to apply for the alteration, discontinuance and lay-
ing out of highways in such town. The object and intention
of the legislature in enacting this statute may be resorted to in
ascertaining its meaning. (*The People* agt. *The Utica Insurance*

*Company*, 15 *Johns.* 358; *Jackson* agt. *Collins*, 3 *Cowen*, 89.) Non-resident landholders wanted highways to enable them to pass to and from their lands without being trespassers; and it is fair to infer the legislature intended to authorize them to apply for the laying out of highways according to their wants and views of what the interests of the public required. And such a construction should be given to the statute in question as will not suffer the intention of the legislature to be defeated. (15 *Johns.* 358; 3 *Cow.* 89.)

The laying out of the highway on or near the same route by two of the three referees appointed by the county judge, was a void proceeding. They laid it through the inclosed, improved and cultivated lands of Augustus Ross, without his consent; and the applicant therefor did not give notice of any meeting of freeholders, to certify in regard to the necessity and propriety of the highway; (1 *R. S.* 514, § 59;) nor did he procure a certificate of twelve freeholders that such highway was necessary and proper. (1 *R. S.* 514, § 58.) The referees, probably, supposed they had no authority to entertain an objection to their acting by reason of such irregularity. (*The Commissioners of highways of Warwick* agt. *The Judges of Orange County*, 13 *Wend.* 432; *but see* 1 *Selden*, 568.)

The commissioners of highways of Preston would be trespassers, if they should open the highway laid out by the referees, or cause it to be worked. (*Clark* agt. *Phelps*, 4 *Cow.* 190.) They cannot be compelled by mandamus to open such highway, or to cause it to be worked. (*Ex parte Clapper*, 3 *Hill*, 458.)

The defendants' counsel contends that the decision of the referees is conclusive for the term of *four years*, unless sooner reversed by *certiorari*. It is true, the statute declares, that " their decision, or that of any two of them, shall be conclusive in the premises." (*Laws of* 1847, *chap.* 455, § 8.) Also, that " such decision shall remain unaltered for the term of *four years* from the time the same shall have been filed in the office of the town clerk." (*Laws of* 1847, *chap.* 455, § 9.) Such, however, is the effect of the decision of referees only, when the proceed-

ings upon which it is founded are not void by reason of the facts being insufficient to confer jurisdiction upon the commissioners to lay out the highway. But when the commissioners lack jurisdiction to lay out the highway applied for, and make an order refusing to lay it, the decision of referees reversing their order, and laying out such highway, is a nullity. (*Harrington* agt. *The People*, 6 *Barb.* 607.) It has no more force than the judgment of a justice of the peace has in an action wherein he never obtained jurisdiction of the parties, by the service of a process, or by a voluntary appearance of the parties before him. Such a judgment is no bar to another action for the same demand included in the judgment. It has no force whatever.

The proceedings on which the referees acted, including their decision, could be reversed by *certiorari;* (6 *Wend.* 564;) and so a void judgment of a justice of the peace may be reversed on appeal. (*Striker* agt. *Mott*, 6 *Wend.* 465; *id.* 564.) But a void decision or judgment does not conclude a party to it. (6 *Wend.* 564; 6 *Barb.* 607.) Void judgments and decisions are as no judgments or decisions, as to a party thereto who chooses so to consider the same; and void judgments and decisions never affect strangers to them.

The foregoing conclusions show that the decision of the referees, laying out a highway on or near the route of the one applied for by Hale and the Waits, is entirely void, and therefore no bar to the right of the relator to require the commissioners to act upon the freeholders' certificate that was procured by Hale and the Waits.

The relator is, therefore, entitled to a peremptory mandamus, commanding the defendants, as commissioners of highways of the town of Preston, to make an order, either laying out, or refusing to lay out, the highway applied for by Hale and the Waits.