(44 Misc. Rep. 492.)

HARRISON v. WALLIS et al.

(Supreme Court, Trial Term, New York County. July, 1904.)

1. SUNDAY—WHAT CONSTITUTES SERVICE OF PROCESS.
   Comp. Laws N. M. 1897, § 1372, providing that Sunday, for the purpose of service of process, shall be regarded as the time between sunrise and midnight of such day, is a valid act.

2. PROCESS—SERVICE ON NONRESIDENTS—PUBLICATION.
   Service on nonresidents of notice of lis pendens is required to be made by Comp. Laws N. M. 1897, §§ 2956, 2964, by a publication in a newspaper for four consecutive weeks, the last publication at least two weeks before the return day. The first publication was made January 17th and the last February 14th, both of which dates were Sundays. Held, that a defendant alleging that notice was not published pursuant to the local

law, and that the court had no jurisdiction, must show that the paper containing the notice was actually published after sunrise on such Sundays in question, section 1372 providing that Sunday shall be regarded as the time between sunrise and midnight of said day.

Action by George W. Harrison against Marie W. Wallis and Edwin A. Wallis on a note where the defense of usury is pleaded; also a counterclaim for rents collected under a mortgage. Case submitted without a jury. Judgment for plaintiff.

George P. Breckenridge, for plaintiff.
Wilson & Wallis, for defendants.

BISCHOFF, J. The action is upon the joint and several promissory note of the defendant for $8,000, with interest at the rate of 12 per cent. per annum, and an additional 10 per cent. of the amount found due as an attorney's fee in case of a suit to enforce the collection of the note. It was made at Albuquerque, N. M., dated November 7, 1893, and payable at the same place, to the plaintiff's order, one year after its date. Being admittedly a contract governed by the laws of New Mexico, the attempted defense of usury is insufficient, because embodying no allegation that the agreement provided for the payment of sums which were usurious under the laws of that territory. Cutler v. Wright, 22 N. Y. 472, 474. The validity of the note under the foreign law has been shown, however, for the plaintiff, without evidence to the contrary in behalf of the defendants, and the amount due is established in accordance with the averments of the complaint.

The defendants' answer to the complaint in this action alleges that at the time of the delivery of the note the defendant Marie W. Wallis was the owner of three distinct parcels of land at Albuquerque, and that to secure the payment of the note she, jointly with the other defendant, executed and delivered a mortgage of such lands to one Willard S. Strickler, as trustee for the plaintiff and any transferee of the note, and that the plaintiff subsequently entered into the possession of the mortgaged lands, and ever since has been in the receipt of the rents, issues, and profits thereof. Because of those facts it is claimed that the amount so received by the plaintiff should be credited to the defendants toward the payment of any indebtedness upon the note. In connection with the defense of payment the answer further alleges that subsequent to the execution and delivery of the mortgage the plaintiff and Strickler instituted an action against the defendants in a court of the territory of New Mexico, which action resulted in a decree for the sale of the lands, and that upon such sale the lands were sold to the plaintiff, or to some one for his use; and it is charged that the proceedings were wholly void in that they "were not in accordance with the laws of the territory of New Mexico"; that they "were instituted and carried through without the knowledge of these defendants, and without notice to them, or either of them," and that "no notice of said pretended proceedings was ever given to or received by these defendants, or either of them, and that they had no knowledge thereof until just prior to the commencement of this action." The sufficiency of the facts stated to support the defense of payment is well open to question as involving no agreement for the appropriation of the rents, issues, and

profits; but, in view of the conclusion reached by me concerning the validity of the New Mexico decree, and the proceedings thereunder, the discussion of this attempted defense seems useless. No reply thereto was made or required.

For the purposes of a counterclaim against the amount due upon the note the defendants reasserted the facts of the mortgage and the plaintiff's subsequent entry into possession of the mortgaged lands, as well as his continued receipt of the rents, issues, and profits thereof, omitting all allusion to the New Mexico action other than that the plaintiff's entry into possession of the mortgaged lands was "without any lawful proceedings instituted and carried through for that purpose, and without extinguishing the right of redemption in said premises vested in these defendants, or one of them." These facts were formally put in issue by the plaintiff's reply. Upon the trial of this action the defendants introduced in evidence a duly exemplified copy of the judgment roll of the District Court of the Second Judicial District of the Territory of New Mexico in and for the county of Bernalillo, where the mortgaged lands were situated, from which it appears that on January 16, 1897, the plaintiff in this action and the said Willard S. Strickler filed their bill of complaint in that court against the defendants here, asserting the note and mortgage above mentioned according to the true tenor and effect of each; that the note remained wholly unpaid; that the defendants were nonresidents of the territory of New Mexico and residents of the state of New York, and praying, among other things, that the mortgaged lands be sold to satisfy the indebtedness upon the note, and that a subpœna in chancery issue to the defendants, commanding them to appear on a day certain, then and there to answer the bill of complaint. It further appears from the judgment roll that upon the plaintiff's application service of a notice of the pendency of the action was directed to be made upon the defendants, as nonresidents of the territory of New Mexico, by publication; that the notice was thereafter published in the Albuquerque Morning Democrat, a newspaper published in Bernalillo county; that a decree pro confesso was taken against the defendants on March 20, 1897, upon their default in appearance; that pursuant to the directions of the decree the mortgaged lands were thereafter sold to the plaintiff; that the sale was approved, and the master's deed of the lands executed and delivered to William B. Childers at the plaintiff's request, and for his use. From a series of deeds, also introduced in evidence for the defendants upon the trial of this action, the contents of which need not be particularly set forth, it also appeared that the plaintiff, Harrison, entered into possession of the lands sold to him, and that he and his grantees have continued in such possession.

It is conceded that the New Mexico court had jurisdiction of the subject-matter of the action, and no question is raised but that the notice of the pendency of the action was the proper process by means of the service of which the court would secure jurisdiction of the defendants for the purposes for which the action was brought. Neither is it disputed that the notice was in proper form, and properly issued, nor that the newspaper in which the notice was published was properly selected and designated for that purpose; the defendants' con-

tention being that the court did not acquire jurisdiction of them for the purposes of the action because of a noncompliance with the laws of the territory of New Mexico respecting service of the notice by publication, a ground of attack upon the decree of foreclosure and sale of the mortgaged premises which the plaintiff does not deny was available to the defendants if sufficiently pleaded. Monroe v. Douglas, 4 Sandf. Ch. 126, 143; Arndt v. Griggs, 134 U. S. 316, 10 Sup. Ct. 557, 33 L. Ed. 918; Lynch v. Murphy, 161 U. S. 247, 16 Sup. Ct. 523, 40 L. Ed. 688; Cooper v. Newell, 173 U. S. 555, 19 Sup. Ct. 506, 43 L. Ed. 808. The plaintiff objected to the introduction of the judgment roll, however, and to evidence in support of the stated ground of attack, basing the objection upon an alleged defect in the answer in that the latter did not specify the claimed want of jurisdiction of the New Mexico court, of the defendants, with the necessary particularity, citing in support of the objection Black, Judg. § 898, and Rice v. Coutant, 38 App. Div. 543, 546, 56 N. Y. Supp. 351. The rule of pleading, however, which the plaintiff seeks to invoke that a denial merely of the foreign judgment does not open the way for the introduction of evidence in conflict with the recitals of the judgment roll, can have no proper application to the case at bar. The plaintiff's cause of action is not upon the judgment, and the allusions to it in the defendants' answer are in no aspect a constituent of either the defense of payment or of the counterclaim. These allusions, in effect, are merely anticipatory of what it was supposed the plaintiff would endeavor to show upon the trial in avoidance of the defense and counterclaim. They involve no more than a pleading of probative facts, evidence of the plaintiff's entry into possession of the mortgaged lands, and his receipt of the income thereof, and are matter which should be treated as redundant and surplusage, and which, upon a proper motion, should have been eliminated from the answer. Bliss, Code Pl. (2d Ed.) § 215; Pom. Code Rem. (3d Ed.) §§ 551, 552; Park & Sons Co. v. Nat. Wholesale Druggists' Ass'n, 30 App. Div. 508, 52 N. Y. Supp. 475; Sands v. St. John, 23 How. Prac. 140. Every allegation of the answer material to the defense stood controverted without a reply, and the allegations material to the counterclaim were controverted by the reply. Code Civ. Proc. § 522. It was, therefore, not only competent to the plaintiff, but incumbent upon him, to show upon the trial, by the record of the New Mexico judgment, that he was in possession of the lands as the owner thereof, the fact of such possession being conceded. The fact that the defendants assumed the task of doing this for him affords the plaintiff no cause for grievance. With the record of the New Mexico judgment in evidence, it was competent for the defendants to show that the record was not what it purported to be, either in law or in fact; this being the first opportunity properly afforded the defendants of denying the existence of the judgment upon which the plaintiff necessarily relied.

The defendants' attack upon the judgment was based upon the ground, as already stated, that it was void as to them for want of jurisdiction, in that it was claimed that the notice of the pendency of the action was not published pursuant to the requirements of the local law, and hence that the New Mexico court was without power to proceed

in the action and to direct a sale of the mortgaged lands. In their attempted support of this contention the defendants introduced the Compiled Laws of the Territory of New Mexico of 1897, and therefrom it appeared (section 2964) that service of the notice of the pendency of the action upon nonresidents of the territory was required to be made by publication thereof in some newspaper published in the county where the cause is pending "for [section 2956] four consecutive weeks, the last publication to be at least two weeks before the return day to which the process is returnable," which, in the action involved in the judgment roll in evidence, was March 1, 1897. The judgment roll showed, by the affidavit of T. M. Wingo, business manager of the Albuquerque Morning Democrat, that the notice was "duly inserted in said newspaper for four successive weeks, the date of the first publication being the 17th day of January, 1897, and the day of the last publication being the 14th day of February, 1897," each of which dates fell upon a Sunday, because of which last-mentioned fact the defendants insist that the service was void, service of judicial process being interdicted upon Sunday at common law and under the statute of New Mexico. The Compiled Laws, hereinbefore mentioned, provided (section 1371) that "no civil process shall be issued or served on said day [Sunday], except in cases of capias, attachment or replevin, when the plaintiff or his agent, shall make oath that he is in danger of being subjected to a loss or serious inconvenience unless process shall be issued or served on said day. In all other cases any civil process issued or service thereof, on said day, shall be void." It also appeared from the Compiled Laws, however (section 1372), that "Sunday, for the purposes of this act, shall be regarded as the time between sunrise and midnight of said day." The New Mexico judgment was presumptively valid (Shumway v. Stillman, 4 Cow. 292, 15 Am. Dec. 374), and to prove it otherwise it was, therefore, incumbent upon the defendants to show that the newspaper containing the notice was actually published after sunrise on the days mentioned. There is no such evidence. Service of judicial process on Sunday was unquestionably void at common law. "Dies Dominicus non est juridicus." 27 Am. & Eng. Encyc. of Law, 389; 19 Encyc. of Pl. & Pr. 600; Story v. Elliot, 8 Cow. 27, 18 Am. Dec. 423; People v. Dewey, 23 Misc. Rep. 267, 50 N. Y. Supp. 1013. Ordinarily, also, Sunday comprehends the natural day, the time from midnight to midnight. 27 Am. & Eng. Encyc. of Law, 388; Pulling v. People, 8 Barb. 387. But it was competent to the Legislature of New Mexico to regulate the observance of the day, and to pronounce valid acts otherwise invalid if performed on that day (27 Am. & Eng. Encyc. of Law, 388; Lindenmuller v. People, 33 Barb. 548; Neuendorff v. Duryea, 69 N. Y. 557, 25 Am. Rep. 235; People v. Haynor, 149 N. Y. 195, 43 N. E. 541, 31 L. R. A. 689, 52 Am. St. Rep. 707; People v. Moses, 140 N. Y. 214, 35 N. E. 499), and it was held accordingly in Connecticut (Fox v. Abel, 2 Conn. 541), where Sunday was defined to mean only the solar period of the day, the time intervening between sunrise and sunset, that an execution against the plaintiff's person was lawfully enforced by his arrest between midnight preceding and daybreak of Sunday; and in Massachusetts (Johnson v. Day, 17 Pick. 106), where service of judicial process was forbid-

den on Sunday between midnight preceding and the sunset following, that the issuance of a writ of attachment against the defendant's property, and a levy under it, after sunset on Sunday, were valid and effectual. It cannot be successfully urged that the interdiction of the issuance or service of judicial process during specified hours or periods of the day did not have the effect of sanctioning such issuance or service at other times of the same day, for unless it be deemed to have been the intention of the Legislature to legalize the issuance and service of process, except as expressly inhibited, the latter provisions would be meaningless. It is one of the canons of statutory interpretation and construction that expressio unius est exclusio alterius (Broom, Legal Max. [7th Ed.] 501; Suth. Stat. Const. § 325 et seq.), and it is peculiarly apposite to the legislation under discussion. For the reason stated, therefore, the publication of the notice of the pendency of the New Mexico action is not to be pronounced ineffectual for the purpose of service upon the defendants because it occurred on Sunday.

Again, the Compiled Laws of New Mexico required (section 2900, subd. 7) that in the computation of time "the first day shall be excluded and the last included, unless the last falls on Sunday, in which case the time prescribed shall be extended so as to include the whole of the following Monday," and hereof it is argued that, since the first day of publication of the notice of the pendency of the action was Sunday, January 17th, the period of publication, four weeks, did not begin until Monday, January 18th, and so did not end until the expiration of Monday, February 15th, which was one day short of two weeks before Monday, March 1st, the return day of the notice; the local law requiring the last "publication" to be two weeks in advance of the return day, reference being had to section 2956 of the Compiled Laws, hereinbefore quoted. In this respect, however, I incline to the view that the defendants err in their construction of the law. Obviously, by the last "publication," the last act of making the notice public—the last insertion in the newspaper prescribed—was intended, not the last day of the period for which the publication was directed. At the time of the original enactment of the law many of the counties in New Mexico had none but weekly newspapers, and it is conceded, therefore, that a publication once a week was all that was required. It appears from the deposition of William B. Childers that there was no Monday issue of the Albuquerque Morning Democrat, that the notice was actually published six times a week for four consecutive weeks; and from the affidavit of T. M. Wingo it appears that the notice was published for four successive weeks, the first publication being on January 17th and the last on February 14th. But if it be assumed that the publication occurred on the Sundays only, beginning with January 17th, the last necessary publication was on Sunday, February 7th, and so the full period of publication, four weeks, was completed before March 1st, the return day of the notice. That the notice was published for a longer time than was necessary did not vitiate it or its service. Taylor v. Coots, 32 Neb. 30, 48 N. W. 964, 29 Am. St. Rep. 426; Fouts v. Mann, 15 Neb. 172, 18 N. W. 64; Hernandez v. Drake, 81 Ill. 34; Atkinson v. Duffy, 16 Minn. 45 (Gil. 30); Burnes v. Burnes, 61 Mo. App. 612; Iowa St. Sav. Bank v. Jacobson, 8 S. D. 292, 66 N. W. 453. It is urged for the de-

fendants, however, that, since the fourth consecutive week following January 17th did not expire until Sunday, February 14th, the period for which publication was directed was concluded only with Monday, February 15th, and that since in the computation of time the following day, February 16th, was to be excluded as the first day of the two weeks preceding the return day of the notice, the prescribed time between the expiration of the period of publication and the last-mentioned day, March 1st—two weeks—was not afforded. As intimated, however, I do not construe section 2956 of the Compiled Laws to demand that the period of publication should be completed two weeks in advance· of the return day. The last advertisement or insertion of the notice only was required to be had at least two weeks before such day. The "last publication" comprehended the last act of making public, and was not synonymous with the last day of the period for which publication was required to be made. The local law was, therefore, satisfied when the notice was inserted in the prescribed paper during the fourth consecutive week following the first publication, and at least two weeks before the return day; and this was on Sunday, February 7th, the first day of the fourth week. Statutory provisions of similar import, and almost identical in language, have been so construed in other jurisdictions. In Lowenstine v. Gillespie, 6 Lea (Tenn.) 641, under a provision requiring publication "for four consecutive weeks, * * * the last publication to be at least one week before the time fixed for the defendant's appearance," it was held that four publications, a week apart, and a week between the last publication and the day for appearance— 28 days in all—were sufficient. A week after the expiration of the full four weeks was not required. See, also, Calvert v. Calvert, 15 Colo. 390, 24 Pac. 1043; Decker v. Myles, 4 Colo. 558; Knowles v. Summey, 52 Miss. 377; Martin v. Hawkins, 62 Ark. 421, 35 S. W. 1104; Guilford Co. v. Georgia Co., 109 N. C. 310, 13. S. E. 861; Wells v. Kelly, 11 Utah, 421, 40 Pac. 705; Knowlton v. Knowlton, 155 Ill. 158, 39 N. E. 595; Banta v. Wood, 32 Iowa, 469; Sweet v. Sprague, 55 Me. 190; Davis v. Huston, 15 Neb. 28, 16 N. W. 820; Alexander v. Alexander, 26 Neb. 68, 41 N. W. 1065; Marling v. Robrecht, 13 W. Va. 440; Savings, etc., Soc. v. Thompson, 32 Cal. 347; Haywood v. Russell, 44 Mo. 252; Mowry v. Blandin, 64 N. H. 3, 4 Atl. 882. Though the cases are not directly in point, this construction also seems to be sanctioned by our court of last resort in Olcott v. Robinson, 21 N. Y. 150, 78 Am. Dec. 126, and Wood v. Morehouse, 45 N. Y. 369. Market Nat. Bank v. Pacific Nat. Bank, 89 N. Y. 397, proceeded upon an express provision of our Code of Civil Procedure that the full period of publication shall be completed before the defendant's time for appearance shall commence. I am referred to no adjudication of a court of New Mexico where the particular section of the Compiled Laws (2956) under present examination was considered and construed, and the testimony of the juris consulti, called and examined as witnesses upon the trial of this action, suffers the controlling construction in New Mexico to remain debatable. I am called upon, therefore, to determine the law of New Mexico upon this point as a question of fact, paying heed to the obvious meaning of the language of the section, and being guided by the settled rules of construction and such construction

as the courts of other jurisdictions and our own court of last resort have given to statutory provisions related in import and clothed in the same or similar language. Suth. Stat. Const. § 192; Smith v. Bartram, 11 Ohio St. 690; Dupuy v. Wurtz, 53 N. Y. 571, citing 12 Moore, 306. True, in Blackwell v. First Nat. Bank of Albuquerque, 10 N. M. 555, 63 Pac. 43, the court had before it section 4076 of the Compiled Laws of the Territory, which provided for the publication of notice of the sale of lands for unpaid taxes "once a week for four consecutive weeks, the last publication to be at least one week prior to the day of sale," and it was held that this language called for an interval of full 35 days between the date of the first publication and the day of the sale. But the opinion in that case does not undertake to discuss the meaning of the language of the section of the Compiled Laws involved, and, so far as it appears, the ratio decidendi of the case was the ruling in Early v. Homans, 16 How. (U. S.) 610, 14 L. Ed. 1079, which is cited approvingly, but where the language construed was essentially different in its effect. The statute there considered provided "that public notice of the time and place of the sale of real property for taxes due to the corporation of the city of Washington shall be given by advertisement inserted in some newspaper published in said city, once in each week for at least twelve successive weeks." This was held to call for a notice of 84 days before the day of sale. It is apparent, however, that the meaning of the words "the last publication to be at least two weeks before the return day to which the process is returnable," in connection with the remainder of the text of section 2956 of the Compiled Laws of New Mexico, or of the words "once a week for four consecutive weeks, the last publication to be at least one week prior to the day of sale," as used in section 4076, were not, and could not have been, involved. Section 2701 of the Compiled Laws of New Mexico relates to attachments of property, and provides for the publication of a notice to the defendant "four weeks successively in some newspaper printed in this territory, the last insertion to be not less then two weeks before the first day of the next term." Though not applicable to the action under review, this section is pari causa, and serves to illustrate the intention of the lawmakers when speaking of the "last publication" in other parts of the same compilation of laws, and it is not an unreasonable assumption that uniformity in the method of procedure was intended and desired.

I am not unmindful of the rule which should ordinarily obtain that effect is to be given by the courts of one state to statutes of other states as construed by the home courts (Jessup v. Carnegie, 80 N. Y. 441, 36 Am. Rep. 643), but the Blackwell Case did not involve the construction of the particular section (2956) of the Compiled Laws now under review, and I am not inclined to follow that ruling, for the reasons that it is in conflict with the construction involved in the action shown by the judgment roll in evidence, that it obviously proceeded upon a misconception of what was decided in the Early Case, that its controlling effect upon the section here under review is in serious doubt, as appears from the testimony of members of the bar of New Mexico examined as witnesses upon the trial of this action, that it tends to destroy uniformity of the method of procedure in New Mexico, that it is in conflict with the construction given to similar statutory provisions by the courts of

other jurisdictions, and is opposed to what appears to be the view of our own court of last resort.

Other points discussed by counsel for the defendants upon their brief involve no question of the jurisdiction of the New Mexico court, and present only alleged errors in the method of the sale of the mortgaged lands, which are not open to review by the courts of another state. From what has been hereinbefore said it follows, of course, that the defendants have not been successful in their attack upon the New Mexico judgment, and so have failed to establish either their defense or their counterclaim. Judgment is therefore directed for the plaintiff, but the allowance of the 10 per cent. for attorney's fees, as provided by the note, is subject to a deduction of $1,025.08, which amount was once charged against the collections upon foreclosure, for the purposes of the balance stated for application to the debt.

Judgment accordingly.