Bradley v. Walker, supra; Fryer v. Rockefeller, 63 N. Y. 268; Carolan v. Yoran, 104 App. Div. 488, 93 N. Y. Supp. 935, affirmed 186 N. Y. 575, 79 N. E. 1102.

The judgment appealed from must be affirmed, with costs.

JENKS, P. J., and THOMAS and WOODWARD, JJ., concur. CARR, J., not voting.

---

### GRING v. AMERICAN PIPE & CONST. CO.

(Supreme Court, Trial Term, Montgomery County.    December 21, 1911.)

1. EJECTMENT (§ 95*)—RIGHT OF POSSESSION—LAND APPROPRIATED TO PUBLIC USE.

Where plaintiff sought to recover from defendant the possession of land which had been appropriated by the state nearly 70 years ago, plaintiff could not recover in the absence of proof that he had acquired title by adverse possession; defendant being in possession with the consent of the state.

[Ed. Note.—For other cases, see Ejectment, Dec. Dig. § 95.*]

2. EMINENT DOMAIN (§ 182*)—APPROPRIATION OF LAND—SERVICE OF NOTICE.

Service of notice of an attempted appropriation of land belonging to a foreign corporation by the state for public purposes on one who was neither connected with the corporation nor the agent of the plaintiff who acquired the land on mortgage foreclosure was ineffectual.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 493–496; Dec. Dig. § 182.*]

3. EMINENT DOMAIN (§ 182*)—LAND FOR CANALS—NOTICE—SERVICE.

The statute under which land was appropriated by the state for canal purposes provided that, if notice could not be served personally on the owner within the state, service might be made by filing a notice with the clerk of the county wherein the property was situated, and from the time of such service the entry on and the appropriation by the state should be deemed complete, and the notice so served should be conclusive evidence of such entry and appropriation and of the quantity and boundaries of the lands appropriated. *Held* that, where lands of a nonresident owner were appropriated by the state and service made by filing with the clerk of the county, such service was complete without the filing of a certificate of the superintendent that he was unable to serve the owner personally within the state.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 493–496; Dec. Dig. § 182.*]

4. EMINENT DOMAIN (§ 182*)—CONDEMNATION PROCEEDINGS—NOTICE TO LANDOWNER—REQUISITES.

In proceedings by the state to condemn land for canal purposes, it is not necessary that notice should be given to the landowner except as provided by statute, since the state may acquire the property of the individual without any notice, provided he has an opportunity for a full hearing of the question of the compensation.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 182.*]

Action by David Gring against the American Pipe & Construction Company to recover real property.    Complaint dismissed.

Countryman, Nellis & Du Bois, for plaintiff.

J. H. Dealy, for defendant.

J. A. KELLOGG, J. This action was commenced June 14, 1911, and is brought to recover possession of certain real property in the village of Cannajoharie, lying upon the south bank of the Mohawk river, and on the west bank of Cannajoharie creek. The plaintiff claims to have acquired title January 12, 1911, by purchase at a sale under foreclosure of a mortgage executed by the Water Supply Company, of which the plaintiff was the president.

The parcel in question contains $1^7/_{10}$ acres of land described as a parallelogram, extending 525 feet southerly from the river and $142\frac{1}{2}$ feet westerly from the creek. Upon this parcel there had been erected a machine shop, which was used by the defendant in the progress of its work as a contractor of the state of New York constructing a portion of the Barge Canal, adjacent to the premises in dispute. This building was erected by the defendant while negotiating with the agent of the Water Supply Company in regard to procuring a lease of the premises in question. The agent having no authority to execute the lease transmitted the proposed document to his principal, the authorized officers of which refused to sign it. On the 15th day of March, 1911, notice was served by the plaintiff upon the defendant to remove from the premises, and, upon his failure to do so, this action has been brought, also demanding damages for the use and occupation of the machine shop constructed by the defendant itself upon the premises in dispute. The plaintiff is a resident of the state of Pennsylvania, and the Water Supply Company is a corporation of the state of New Jersey.

It appears from the evidence that about the time of the enlargement of the Erie Canal in 1842 lands were appropriated by the state for the purpose of straightening Cannajoharie creek. At the point in question the "blue line," indicating upon the map the westerly boundary of the lands thus appropriated, was drawn slightly to the west of the creek as it at that time flowed. Since that time the creek has somewhat diverged to the east, increasing the area of land between its west bank and the "blue line."

[1] Within the limits of the lands thus appropriated by the state, as located upon the maps in the state engineer's office which are made evidence of the state's title (Canal Law [Consol. Laws 1909, c. 5] § 5; Laws 1837, c. 451, § 6; Carpenter v. Cohoes, 81 N. Y. 21, 37 Am. Rep. 468) lies the major portion of the land in dispute. This land having been appropriated by the state nearly 70 years ago, and there being no sufficient proof of acquisition of title by the plaintiff by adverse possession, he cannot maintain an action to eject therefrom one who is in peaceful possession with the consent of the true owner, the state of New York. A minor portion of the premises in dispute, however, are not within the appropriation indicated by the old "blue line" upon the state map, and consist of two small triangular parcels of land. One of these the state of New York attempted to appropriate in November, 1910, while the Water Supply Company was the owner. This parcel contains less than one-fifth of one acre. The remaining parcel the state attempted to appropriate in May, 1911, subsequent to the acquisition thereof by the plaintiff, but prior to the

commencement of this action. This parcel contains less than one-fourth of one acre of land. It is claimed by plaintiff, however, that these appropriations were not legally made, and that, therefore, the title did not pass to the state.

[2] This contention arises from the fact that no notice was served upon the owners. At the time of the attempted appropriation from the Water Supply Company, it was a foreign corporation, and at the time of the attempted appropriation from the plaintiff he was a resident of the state of Pennsylvania. The notice in both cases was served upon one Charles E. Shultz, who it appears was neither connected with the Water Supply Company, nor an agent of the plaintiff. The affidavit of Capt. Houghtailing shows that he served upon Shultz as president of the "Water Company," the word "Supply" being erased from the title of the company as originally written in the affidavit, and upon the said Shultz as agent for the owner, David Gring. This service was undoubtedly ineffectual, but the statute, however, provides:

"If the superintendent of public works shall not be able to serve said notice upon the owner personally within this state after making efforts so to do, which in his judgment are under the circumstances reasonable and proper, he may serve the same by filing it with the clerk of the county wherein the property so appropriated is situate. From the time of the service of such notice, the entry upon and the appropriation by the state of the real property therein described for the purposes of the work and improvement provided for by this act, shall be deemed complete, and such notice so served shall be conclusive evidence of such entry and appropriation and of the quantity and boundaries of the lands appropriated." Laws 1903, c. 147, § 4.

The statute further provides in the same section that the notice and proof of service thereof may be recorded in the office of the county clerk and such records shall constitute the prima facie evidence of the due service thereof. The notices in question were both filed and recorded. The only purpose for which they could legally and properly be filed was to make service thereof as required by the statute when the superintendent was unable to serve notice upon the owner personally within the state. The fact that he filed these notices in the county clerk's office shows that he was not satisfied with the attempted service upon Shultz, and was taking this method to procure substituted service as permitted by law. It is quite clear that in many cases this would be the only method of service available. Frequently instances must arise of doubtful or disputed ownership and other cases, similar to the one now under consideration, where the owners are foreign corporations and nonresidents, in which case personal service within the state may be impossible.

[3] The contention of the plaintiff that the superintendent should have filed with the notice a certificate that he was unable to serve upon the owner personally within this state after making efforts to do so, which in his judgment are under the circumstances reasonable and proper, is without force. The statute does not require such a certificate, and the mere filing of the notice by the superintendent is evidence of what his "judgment" in the matter is.

[4] It is not necessary that notice should be given to the owner

except as provided by statute. The state has a right to acquire the property of the individual without any notice whatever, provided he has an opportunity for a full and fair hearing on the question of compensation. The statutes under which the canal lands were originally acquired contained no provision for serving notice upon the owner in any manner. 1 R. S. 220, § 16; Laws 1835, c. 274, § 5. The constitutionality of these and similar acts has been asserted in People v. Adirondack Railway Co., 160 N. Y. 225, 240, 241, 54 N. E. 689.

The only notice which the owners were entitled to have of the appropriation itself is such as is provided by statute, and the constitutional rights of these owners were not invaded by the provision that the notice might be filed in the county clerk's office. Upon such filing the appropriation was complete, and the plaintiff had a right to prosecute his claim for such appropriation by the state, against which, so far as these later appropriations are concerned, his true remedy lies, and not against this defendant.

The complaint should be dismissed upon the merits, with costs.

---

### CROGHAN v. HEDDEN CONST. CO.

(Supreme Court, Appellate Division, Second Department. December 15, 1911.)

1. APPEAL AND ERROR (§ 171*)—REVIEW—CHANGING THEORY ON APPEAL.

Where, in an action for the death of a servant, the court's charge that the negligence of a fellow servant was the proximate cause of the accident was not objected to, and the theory that such person was a vice principal was not affirmatively presented, the theory cannot be asserted on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1053–1069, 1161–1165; Dec. Dig. § 171.*]

2. MASTER AND SERVANT (§ 190*)—LIABILITY FOR INJURY TO SERVANT—NEGLIGENCE OF FELLOW SERVANT.

Where a person was a mere member of a gang of laborers, the fact that he was assigned the duty of giving the signals for the raising and lowering of an elevator will not make him a superintendent, so as to render the company liable for the death of a fellow servant by an accident proximately caused by his negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 449–474; Dec. Dig. § 190.*]

3. MASTER AND SERVANT (§ 105*)—LIABILITY FOR INJURIES TO SERVANT—DEFECTS—APPLIANCES.

An employer is not relieved from liability for an injury caused by its method of operating a hoisting device, although it was operated in the manner in general use at the time in the particular locality by other constructing firms, as use of a dangerous device by others would not excuse the employer.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 185–191; Dec. Dig. § 105.*]

Appeal from Trial Term, Westchester County.