In the Matter of the Application of THE CITY OF NEW YORK, Relative to Acquiring Title to Property Extending from Flushing Bay to Interborough Parkway-Grand Central Parkway and East and West of Grand Central Parkway Extension.

Supreme Court, Special Term, Queens County, December 6, 1937.

*Paul Windels, Corporation Counsel [Benjamin Offner, Isador Bleich,* and *Herman Meltzer, Assistants Corporation Counsel],* for the City of New York.

*Skinner & Bermant, Roe & Kramer, Thomas P. deGraffenried* and *Ellery O. Anderson,* for the claimants.

LOCKWOOD, J.  Damage parcels 440, 441, 442, 444, 445, 447, 448, 450, 455, 456, 457, 467, 468, 471, 473, 475, 486, 487, 477, 494, 495, 497, 499, 531, 534, 537, 538, 539, 540, 543, 544, 546, 547, 548, 552, 554, 557, 564, claimed to be in nineteen separate ownerships, generally comprised the vacant meadow lands south of the Long Island railroad east and west of Flushing river.

As to these parcels, the city maintained that the proofs submitted, consisting of twenty-year chains of title, were insufficient and the claimants were notified that they would be required to present their evidence of ownership to the court pursuant to the provisions of section 1445 of the charter.

Thereafter, proof was submitted in court on several days, and the last hearing was held November 24, 1937.  The evidence affecting all parcels, with minor exceptions, consisted of documents establishing unbroken chains of title going back over one hundred years.

In addition, the claimants offered an abundance of testimony to show possession of the property for continuous periods of more than fifteen years.

About fifty witnesses testified.  Practically all were life-long residents of Flushing.  Many were over sixty years old, and some were more than seventy years of age.  Their testimony shows that the parcels involved were formerly meadow lands owned in some cases by owners of contiguous farms and in others by those who held title to nearby farms.  The extent and boundaries of the meadow ownerships were indicated either by ditches or by stakes.

It was further testified that these lands were not capable of being cultivated in the usual manner.  Only salt hay would grow on these meadows, and the proof shows that the hay was cut each

and every year for continuous periods ranging from at least fifteen years to upwards of thirty years.

Some owners would rent out the privilege of cutting the hay to those who sold it for packing purposes to glass and chinaware manufacturers. Other owners cut the hay and used it on their adjoining or nearby farms.

In all cases, the testimony as to possession, coupled with the record title, is sufficient to establish ownership in the respective claimants.

Section 37 of the Civil Practice Act provides: "Where the occupant or those under whom he claims entered into the possession of the premises under claim of title, exclusive of any other right, founding the claim upon a written instrument, as being a conveyance of the premises in question * * * and there has been a continued occupation and possession of the premises included in the instrument * * * for fifteen years, under the same claim, the premises so included are deemed to have been held adversely."

Section 38 of the Civil Practice Act reads:

" For the purpose of constituting an adverse possession, by a person claiming a title founded upon a written instrument * * * land is deemed to have been possessed and occupied in either of the following cases:

" 1. Where it has been usually cultivated or improved."

In *Shinnecock Hills & Peconic Bay Realty Co.* v. *Aldrich* (132 App. Div. 118) the action was to enjoin a trespass and involved a question of title to a strip of salt meadow. In addition to a paper title under which the defendants claimed, it was shown that the claim of ownership of the defendants and their predecessors had been open, notorious, and unquestioned and they or their lessees had annually mowed the meadow and carried away the hay. The court decided that the defendants' evidence tended to show an adverse possession for twenty years (only fifteen years required now) under a claim of title, and said (at p. 124): " It [the evidence] shows a regular, open and notorious use of the land, and, in fact, the only use for the purposes of husbandry of which it was susceptible."

After referring to section 370 of the Code of Civil Procedure (now Civ. Prac. Act, § 38), the court continued (at pp. 124, 125): " I do not think the words ' cultivated or improved ' should be used in a technical or narrow sense. The purpose of the statute was doubtless to require that the possession should be visible, open, notorious. There is no doubt that every farmer in the locality of this salt meadow understood who claimed to own it.

' To cultivate is defined, " to improve the product of the earth by manual industry." When speaking of improved land, it is generally understood to be such as has been reclaimed, is used for the purpose of husbandry, and is cultivated as such, whether the appropriation is for tillage, meadow or pasture.' (*Clark* v. *Phelps*, 4 Cow. 190, 203.) That case dealt with another statute, but the quotation is appropriate to this. The land in question is not susceptible of being tilled. Doubtless only the natural grass will grow upon it. Unless annual cutting and carrying away of that grass for purposes of husbandry constitutes cultivation or improvement of the land within the meaning of the Code, it is not possible ever to acquire adverse possession of such land, no matter how notorious the possession in fact may be. The defendants got hay, not ' thatch,' from this meadow. They doubtless used that hay for fodder or bedding. Doubtless the annual cutting of the grass improved the crop, at least it made it possible to get a crop, which would be difficult if the grass were not cut regularly. That was the only improvement practicable, at least for agricultural purposes. Had this been an upland meadow, no one would doubt that mowing it annually and taking away the grass were enough to constitute adverse possession. A good farmer might fertilize his meadow lands and regularly break them up; but he would still have adverse possession of them within the meaning of the statute, if he merely cut and carried away the grass. This record suggests, what I understand to be the fact, that the farmers of Long Island regard their salt meadows as more valuable and the use of them more important than was evidently made to appear in some of the cases hereinbefore cited. It appears that the salt meadows were the first lands allotted by the early settlers, and it seems to me that acts of ownership sufficient to give rise to a presumption of a valid grant ought to be sufficient, if under a paper title, to constitute a technical adverse possession."

In *Koch* v. *Ellwood* (138 App. Div. 584) the plaintiff showed that the defendant had no title to four-fifths of the land by deed or inheritance. But the defendant claimed title to this property comprising salt meadows by adverse possession, and his contention was upheld. The opinion of the court reads (at p. 586): " The land has been for at least thirty years surrounded by a ditch or ditches, and in part by a branch of New creek, constituting in a legal sense a ' substantial inclosure,' and has been ' usually cultivated.' The cultivation is that usual in that vicinity for such land, and is such as the nature of the land alone permits. The salt grass has been cut. To this and this use only the land is

adaptable. To mow annually salt grass from a salt marsh is equivalent to the annual mowing of a superior quality of grass on firmer and dryer ground, and the humbler and less profitable and productive crop is none the less in the quality of the act a cultivation of the soil. If such cultivation does not meet the requirements of the statute, such land cannot become the subject of adverse possession through cultivation."

In *Evans* v. *Lux* (121 Misc. 466, at p. 473), where the defendant's claim of ownership to salt meadows by adverse possession was upheld, the court said: " For thirty-two years immediately prior to the beginning of this action defendant and his immediate predecessor, Charles' A. Lux, have claimed the title to and ownership of the land in dispute on the strength of the deed from Vorce founded originally on the deed from Howland to Jones. That claim was openly made and known to the neighbors and others interested including the State authorities and plaintiff's predecessor within twenty years, Mr. Newton. After being ordered off, the latter, as well as every one else, accepted that situation and acted accordingly. Yearly during all that time the flag and the marsh hay which were the only crops the land could produce were harvested and used either personally or for sale by Mr. Lux, his agent, his employees and his successor. That was the only use for purposes of husbandry of which the land was susceptible and apparently its only use for any purpose. It constituted usual cultivation within the meaning of the statute and defendant's claim of ownership from adverse possession must be sustained. (*Shinnecock Hills & Peconic Bay Realty Co.* v. *Aldrich*, 132 App. Div. 118; *Koch* v. *Ellwood*, 138 id. 584; *Ramapo Mfg. Co.* v. *Mapes*, 216 N. Y. 362.) "

While not of great importance, it may be noted that the claimants and their predecessors paid taxes on these properties for many years prior to the acquisition herein.

It was also shown that adjacent meadow lands formerly part of these same ownerships were acquired by the city in other proceedings for street or park purposes. In such proceedings, awards were made and paid to claimants for the meadow lands acquired and in some cases the remainders here taken were there assessed for benefit. The assessments thus levied were also paid by claimants or their predecessors.

After a careful consideration of all the evidence, the court is of the opinion that the respective claimants were the owners of the parcels in question on the date title vested with the exception of damage parcel No. 546, to which reference will be made later.

The corporation counsel is accordingly directed to prepare and submit a last partial final decree providing for payment of the awards as hereinafter specified:

## DAMAGE PARCELS.

440, 441, 442, 444, 445, 447 and 448. An award of $140,000 has been made for these parcels. All were owned by Heinr, Franck Sons, Inc., except damage parcel 448, title to which was in The Flushing Land Company. The award for No. 448 having been duly assigned to Heinr, Franck Sons, Inc., the total award shall be made payable to the latter corporation.

450. Mary E. Wood.

455, 456, 457. William D. McCoy and Ann McCoy Winters, individually and as executors of the last will and testament of the last will and testament of Alice C. McCoy, deceased — undivided one-half interest. National City Bank of New York, as trustee under the last will and testament of Alice C. McCoy, deceased — undivided one-half interest.

467, 468, 471, 473, 475. John J. Halleran.

486, 487. John J. Halleran.·

477. William D. Sloane.

494, 495. Lewis Homes Co., Inc.,— undivided one-half interest. James S. Lawson — undivided one-half interest.

497. The Flushingside Realty and Construction Company.

499. The Flushingside Realty and Construction Company.

531. Mary Connolly.

534. Barnet Koppell Sprayregen.

537. Elizabeth R. Odekirk, Mary G. Odekirk and Irene H. Collison — each an undivided one-third interest.

538. Nelson J. Springsteen, Howard D. Springsteen, George S. Springsteen, David Springsteen, Azariah M. Springsteen and Ella A. Batcheller — each an undivided one-sixth interest.

539. Catherine A. Harrison.

540. The Cord Meyer Company.

543, 544, 546. An award of $62,000 has been made for these parcels. It is conceded that the proof submitted is insufficient to sustain the claim of ownership to damage parcel No. 546, originally made by Rosemant Improvement Corporation. The award of $62,000 is, therefore, apportioned as follows: Nos. 543 and 544.— $60,750, to be made payable to Rosemant Improvement Corporation. No. 546.— $1,250, payable to " unknown owner."

547, 548. John H. Ireland Realty Co., Inc.

552. The Flushingside Realty and Construction Company.

554. Thomas F. Martin Realty Company.

557. John McKey — an undivided one-half interest. Irene Cantwell — an undivided one-half interest.

564. Angof Holding Company, Inc.

The corporation counsel is directed to make the awards in the decree payable subject to the liens and incumbrances disclosed by the proof submitted, and suitable provision shall be included to eliminate interest on all awards, except damage parcel No. 546, for the sixty-day period specified in the stipulation entered into by the claimants.